<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|                        |     |                          |
|------------------------|-----|--------------------------|
| JAMES HOWARD,          | :   |                          |
|                        | :   |                          |
| Plaintiff,             | :   | Civil No. 07-5394 (DMC)  |
|                        | :   |                          |
| v.                     | :   |                          |
|                        | :   |                          |
| JACK DOES 1-40, et al.,| :   | **O P I N I O N**        |
|                        | :   |                          |
| Defendants.            | :   |                          |

---

**APPEARANCES:**

> JAMES HOWARD, Plaintiff Pro Se
> Special Treatment Unit
> Avenel, New Jersey 07001

**Cavanaugh**, District Judge

This matter comes before the Court upon submission of a "re-amended" complaint ("Final Complaint") by Plaintiff James Howard ("Howard"). <u>See</u> Docket Entry No. 4. For the reasons stated below, Howard's Final Complaint will be dismissed. Certain Howard's claims will be dismissed with prejudice, while his other claims will be dismissed without prejudice.

<u>**BACKGROUND**</u>

**I.   PROCEDURAL POSTURE OF THE INSTANT ACTION**

On September 21, 2007, the Clerk received the complaint ("Original Complaint") docketed as Entry No. 1 in the Civil Action <u>Banda v. Corzine</u>, 07-4508 (WJM) ("<u>Banda</u> Matter"), as well as Entry

Page -1-

No. 1 in the instant matter. The Original Complaint asserted claims on behalf of numerous plaintiffs ("Plaintiffs"), with Howard being one of them.[1] See Docket Entry No. 1. On November 1, 2007, Judge Martini, presiding over the Banda Matter, issued an Order and accompanying Opinion ("November Order and November Opinion") dismissing the Original Complaint and terminating the Banda Matter. See instant matter, Docket Entries Nos. 2 and 3. Pursuant to Judge Martini's November Order, all Plaintiffs other than Plaintiff Banda were terminated as Plaintiffs in the Banda Matter, and the Clerk opened individual matters for each of these Plaintiffs, Howard being one of them. See Docket Entry No. 3, at 2. In addition, pursuant to Judge Martini's November Order, Howard's claims contained in the Original Complaint were dismissed without prejudice, and Howard was granted leave to amend the Original Complaint. See id. at 3.

On November 23, 2007, Howard executed his amended complaint ("Amended Complaint"), together with his application for appointment of pro bono counsel, and the Clerk docketed these submissions on November 26, 2007, in the instant matter, which was assigned to the undersigned. See Docket Entry No. 4, 5.

---

[1]

Plaintiffs were a group of involuntary civilly-committed persons, pursuant to the Sexually Violent Predator Act ("SVPA"), N.J. Stat. Ann. § 30:4-27.24, et seq., and confined at the Special Treatment Unit Annex, Avenel, New Jersey ("Facility"); Plaintiffs "self-certified" themselves into a "class" for the purpose of filing their original complaint. See Docket Entry No. 1.

Consequently, this Court directed the Clerk to reopen the instant matter for the purpose of screening Howard's Amended Complaint. <u>See</u> Docket Entry No. 8.  On April 24, 2008, this Court issued an order and accompanying opinion ("April Order" and "April Opinion") dismissing the Amended Complaint without prejudice to Howard's filing of the Final Complaint.  <u>See</u> Docket Entries Nos. 9 and 10. Pursuant to this Court's April Order, Howard filed the Final Complaint on May 1, 2008, and this Court directed the Clerk to reopen this matter five days later. <u>See</u> Docket Entries Nos. 11 and 12.  The instant Opinion, thus, summarizes the entire line of Howard's allegations, as stated in all his submissions, and provides disposition of Howard's Final Complaint.

## II.  HOWARD'S ALLEGATIONS

### A.  <u>Allegations Stated in the Original Complaint</u>

This Original Complaint submitted by Plaintiffs alleged that, on August 30, 2007, Plaintiffs' constitutional rights were violated by one hundred and eight defendants.[2]  <u>See</u> Docket Entry No. 1.  The

---

[2]

The list of original Defendants was as follows: Defendant Jon Corzine, Governor of the State of New Jersey; Defendant George Hayman, Commissioner of New Jersey Department of Corrections; Defendant Bernard Goodwin, Administrator of the Facility; Defendant Cindy Sweeney, Assistant Superintendent of the Facility; Defendant Anne Milgram, Attorney General for the State of New Jersey; Defendant Merrill Main, Clinical Director of the Facility; Defendant Tina Spanuolo, Supervising Program Specialist at the Facility; and one hundred John/Jack/Jane/Joan Doe Defendants, who are corrections officers or public advocates employed by the State

allegations set forth in the Original Complaint fell into two categories: (1) those common to all Plaintiffs; and (2) those based on the circumstances particular to--and, therefore, presenting claims unique to--individual Plaintiffs.  See id.  The allegations common to all Plaintiffs were summarized by Judge Martini as follows:

> According to Plaintiffs, the chain of August 30th events started at 8:25 A.M. with the appearance of an unnamed corrections officer, who was "with a 'gun.'"  Allegedly, five minutes later, at 8:30 A.M., Plaintiffs . . . were "ordered to the Dayroom [and] told to line up and face the wall, [and] keep eyes forward."  Plaintiffs allege that, five minutes later, they were "pat-searched and led to the Rec[reation] Yard."  Seven minutes after they entered the recreation yard, Plaintiffs were handed cups and served with, approximately, half-a-cup of water per person.  From this point on, water was re-served to Plaintiffs on half-an-hour or hourly basis, although Plaintiffs were finding the supply of water insufficient, and the water itself insufficiently chilled.  According to Plaintiffs, at 8:45 A.M., that is, thirteen minutes after Plaintiffs were removed into the recreation yard, the Facility officials brought drug-sniffing canines into the Facility and began a search for controlled substances; the search inside the Facility continues for one hour and twenty-two minutes, and it was followed by a one hour and thirteen minutes search of the external parts of the Facility and adjoining trailers.  After the search was completed, Plaintiffs were ordered to line up in the recreation yard . . . and, fifteen minutes later, an unspecified number of [Plaintiffs] . . . was brought into the Facility for lunch.  About half an hour later, another group of [Plaintiffs] . . . was brought into the Facility for lunch.  The remaining [Plaintiffs] . . . were brought into the Facility to consume lunch in unspecified sub-groups and time increments, with the last Detainee being brought into the Facility no later than at 1:25 P.M., that is, about two hours after the entire

---

of New Jersey, as well as Defendant John Doe, who is a "Regional Commander of Department of Corrections."  See id., caption.

lunch service started. Plaintiffs assert[ed] that
Plaintiffs experienced "intimidation" during their return
to the Facility as a result of a "show of force" which
ensued from the fact that the Facility officers were
"holding . . . 'Riot Guns.'" Plaintiffs assert[ed] that
[they] were denied (a) access to bathrooms for the period
of five minutes, and (b) access to showers for about ten
minutes. The . . . "Dayroom" and Mess Hall became . . .
available for regular use by [Plaintiffs] one hour and
twelve minutes after all [they] returned to the Facility.

Banda Matter, Docket Entry No. 2, at 3-6 (citations and footnotes

omitted).

In addition, Judge Martini's November Opinion summarized

allegations unique to each Plaintiff.   See id. at 6-11.   With

respect to Howard, Judge Martini noted that the Original Complaint

assert[ed] that, at 12:15 P.M., . . . Howard fell out and
was declared dead by an unnamed entity but then was
revived, either by the same or by another unnamed entity.
Upon . . . Howard's alleged clinical death (and potential
"revival"), the Facility officials called for an
ambulance, which took . . . Howard to a hospital at 1:00
P.M. [At a certain unspecified point,] Howard developed
a fever, and . . . a nurse was seen giving C.P.R. to . .
. Howard during the time when . . . Howard was on his way
to the ambulance.   . . .   Howard returned from the
hospital to the Facility on September 7, 2007, that is
eight days after his alleged clinical death.

Id. at 8-9 (citations, quotation marks, brackets and footnotes

omitted).


**B.   Judge Martini's Treatment of the Original Complaint**

Responding to Plaintiffs' common claims that

the search for controlled substances performed by the
Facility officials was an "unlawful 'prison' search"
impermissible with respect to . . . civilly-committed . .
. . Plaintiffs [as well as to Plaintiff's allegations

that] the search . . . amounted to a cruel and unusual punishment . . . since: (a) "there was [n]o shade in the [recreation] yard with the exception of a small tent[,] which could not accommodate" [everyone in the yard]; (b) [the outside temperature was] 90 to 95 degree[s]"; (c) re-servings of water to [Plaintiffs] was no more frequent than every half an hour and the water served was "usually warm"; and (d) corrections officers "brandished M-16 style guns with individualized mace balls, [and] other weapons[,] such as batons and night sticks[,] were also brandished,"

id. at 12, Judge Martini dismissed these allegations for failure to state a claim upon which relief may be granted.  See id. at 21-36.

Addressing Plaintiff's Fourth Amendment claims, Judge Martini explained that, pursuant to Hudson v. Palmer, 468 U.S. 517, 530 (1984), and Bell v. Wolfish, 441 U.S. 520, 558-560 (1979), the search of the Facility was not "illegal," because Plaintiffs' expectations of privacy yield to the Facility officials' legitimate governmental interests to ensure that the Facility remains free of controlled substances.  See Docket Entry No. 2, at 22-23.  With respect to Plaintiffs' due process claims, Judge Martini subdivided Plaintiffs' allegations into three groups: (1) those challenging Plaintiffs' conditions of confinement; (2) those asserting verbal and "visual" harassment; and (3) those related to Plaintiffs' medical conditions.  See id. at 23-36.  Judge Martini clarified to Plaintiffs that acts or verbal (or "visual") harassment cannot, on their own, serve as a basis to cognizable constitutional challenges.  See id. at 30-31.

Addressing Plaintiffs' medical claims, Judge Martini first detailed to Plaintiffs the applicable standard and then addressed their substantive claims. See id. at 32 (citing Rhodes v. Chapman, 452 U.S. 337, 346-47 (1981); Estelle v. Gamble, 429 U.S. 97 (1976); and Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). While Judge Martini dismissed the bulk of Plaintiffs' medical claims with prejudice, see id. at 33-35, he stated, with respect to Howard's claims, that

> the [Original] Complaint is not clear as to the medical needs, and treatment of those needs by the Facility's medical personnel (or the hospital personnel), with respect to . . . Plaintiffs [like Howard]. While it appears that these . . . Plaintiffs were availed to immediate attention by the corrections officials when these . . . Plaintiffs developed their ailments and/or medical conditions, the Complaint fails to specify whether . . . Howard . . . obtained any medical treatment at the hospital where [he was] taken.

Id. at 35.

Consequently, Judge Martini granted Howard leave to amend the Original Complaint by clarifying Howard's claims in the Amended Complaint. See id. at 62.

Next, with respect to Plaintiffs' conditions of confinement claims, Judge Martini explained to Plaintiffs that the Third Circuit established a two-part test reading as follows:

> we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period

of time, that the adverse conditions become excessive in relation to the purpose assigned to them.

Union County Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983).

Taking judicial notice of the weather conditions existing in Plaintiffs' locale during the hours at issue,[3] Judge Martini concluded that, being placed in the Facility's recreation yard for three to five hours on a summer morning, when the weather conditions were mild, could not amount to a "hardship over an extended period of time," or to "adverse conditions" excessive in relation to the purpose of keeping Facility detainees outside the Facility during a legitimate search for controlled substances. See id. at 26-27. Consequently, Judge Martini dismissed all Plaintiffs' conditions of confinement common claims.

Finally, turning to the issue of whether to certify Plaintiff's class, Judge Martini explained that the Original Complaint provided him with no basis for such certification, pursuant to the standard set in Rule 23, see id. at 36-50, and denied certification while observing that a court should be

> mindful of the fact that it is all too easy for one inmate with some purported knowledge of the law to persuade others to join a complaint, whether or not it is in the best interests of the others to do so.

---

[3]

The weather conditions were as follows: temperature varied between 72 and 84.5 degrees Fahrenheit, humidity was 61 percent, and western wind varied from 3.5 to 6.9 mph. See Docket Entry No. 2, at 26.

Id. at 38 (citing Swenson v. MacDonald, 2006 U.S. Dist. LEXIS 5784, at *5-6 (D. Mont. Jan. 30, 2006)).  Judge Martini, therefore, dismissed the Original Complaint for failure to state a claim upon which relief may be granted and, in addition, enjoined the Clerk from opening any new matters, in which Plaintiff Banda sought to act as a pro se in forma pauperis plaintiff asserting a civil rights violation, without first obtaining leave of the Court.  See Docket Entries Nos. 2 and 3.

### C.   Allegations Stated in the Amended Complaint

On November 26, 2007, the Clerk docketed Howard's Amended Complaint.  See Docket Entry No. 5.  The Amended Complaint was a nine-page document naming, as Defendants, "John Doe, Regional Commander of the Department of Corrections Special Operations Group" and Jack Does, 1-40, as well as Joan Doe, 1-40, who are "Department of Corrections Special Operations Group Correctional Officers."  See id. at 1, caption.  Following the caption, the Amended Complaint included: (a) 5 paragraphs of self-typed (rather then pre-printed) "Instructions," see id. at 1; (b) two pre-printed pages of instructions titled "Form to Be Used by a Prisoner in Filing a Civil Rights Complaint," see id. at 2-3; (c) self-typed list of parties named in the Amended Complaint asserting that the Defendants in this action "gave unprofessional errors of judgement and gross negligence in ordering and enforcing the removal of all

[Facility detainees] from the . . . [b]uilding to stay out in [h]ot [s]un for approx[imately six and a half] hours," see id. at 4-5; (d) self-typed section titled "Statement of Claims" consisting of 33 paragraphs, see id. at 5-8; and (e) a request for relief in the amount of $815 million in damages, where $15 million are sought from Defendant "John Doe, Regional Commander of the Department of Corrections Special Operations Group," and $10 million are sought from each Joan and/or Jack Doe, who are "Department of Corrections Special Operations Group Correctional Officers." See id. at 9.

Short of four exceptions detailed below, all parts of the Amended Complaint were substantively identical to the corresponding parts of the Original Complaint. Cf. Docket Entries Nos. 1, 4. Moreover, short of the same four exceptions, the Amended Complaint was substantively and literally identical to: (a) an "amended complaint" submitted by Plaintiff Banda ("Banda's Complaint") and construed by Judge Martini as Plaintiff Banda's motion for reconsideration of the November Order, see Banda Matter, 07-4508, Docket Entries Nos. 6, 7; and (b) other "amended complaints" filed by Plaintiffs with this District and assigned, inter alia, to this Court. See e.g., Haines v. Jack Does 1-40, 07-5387 (SRC), Docket Entry No. 4 ("Haines' Complaint"); Williams v. Jack Does 1-40, 07-5395 (SRC), Docket Entry No. 4 ("Williams' Complaint"). These four exceptions excluded, Howard's Amended Complaint repeats, nearly verbatim, the allegations that were addressed by Judge

Martini and dismissed, for failure to state a claim, in Judge Martini's November Order and November Opinion.

The sole difference between Howard's Amended Complaint and Banda's Complaint or Haines' Complaint, or Williams' Complaint, was limited to four entries, reading:

1.   [The] stay out in the [h]ot [s]un . . . caused injury to [Howard] in getting [h]eat [s]troke that brough on a [h]eart [a]ttack, to which [Howard] "[d]ied" and was brough back to life, for this [Howard] to be brough to Rahway General Hospital for observation[,] . . . then a few days after [he] was brought to St. Francis Hospital in Trenton, New Jersey.

Docket Entry No. 5, at 4-6 (repeated verbatim or paraphrased in similar terms four times, see id. ¶¶ 4(c), 4(d), 11 and 12).

2.   On [August 30th, Howard] woke[]up when [the searching officials] came into the . . . Facility, [d]ue to waking up late [on that day, Howard] missed [b]reakfast, [Howard is a diabetic [and, thus,] for emergency purposes of when [Howard oversleeps and] miss[es] [b]reakfast, [h]e has some food in storage; [w]hen [the searching officers] came in, [t]hey woke [Howard] up and [did] not allow [h]im to eat any of [h]is emergency food.

Id. at 7.

3.   At the time [when Howard] pass[ed] out . . . at approx[imately] 12:15 P.M. to 12:50 P.M. on [August 30, 2007, a certain Facility corrections officer] requested that the [n]urse [would] take a finger prick, sugar level was found to be very low due to not eating, [Howard] was close to going into a diabetic com[]a.

Id.

4.   Let it be known that when [Howard] was brought back to life on [August 30, 2007], that [h]e had to be "shocked" back to life.

Id.

Since, short of the four entries detailed above, the Amended Complaint repeated the allegations made in the Original Complaint and dismissed by Judge Martini for failure to state a claim upon which relief may be granted, this Court's analysis of the Amended Complaint was limited to the allegations made in these four entries.

### D.   **This Court's Treatment of the Amended Complaint**

The Court first reminded Howard Judge Martini's clarification as to how the issue of whether a civil detainee has been deprived of liberty without due process is analyzed pursuant to the standards set out by the Supreme Court in <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-39 (1979).  <u>Fuentes</u>, 206 F.3d at 341-42.

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of [civil] detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment."  Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees <u>qua</u> detainees.

Docket Entry No. 9, at 14-15.

This Court then explained to Howard that the

> government has legitimate interests that stem from its
> need to maintain security and order at the detention
> facility.  "Restraints that are reasonably related to the
> institution's interest in maintaining jail security do
> not, without more, constitute unconstitutional
> punishment, even if they are discomforting and are
> restrictions that the detainee would not have experienced
> had he been released while awaiting trial." . . . Since
> a sweeping search of the facility for presence of
> controlled substances is certainly a legitimate
> governmental purpose, a removal of civilly-committed
> detainees in the facility recreation yard for the
> purposes of conducting such search does not violate the
> detainees' due process, especially if the detainees are
> placed in the yard only for a few hours, served certain
> amount of water, allowed to consume their lunch in a
> timely fashion, and the entire event takes place during
> a summer morning when the temperature fluctuates between
> 74 and 82.5 degrees Fahrenheit. In contrast, if
> defendants prevent a plaintiff-detainee from taking his
> medicine (or medicine-like substance) while being aware
> of the fact that the plaintiff's health could be at risk,
> such risk might be found excessive in relation to the
> purpose of conducting a search of the facility and, thus,
> the defendants' actions could be deemed "punishment"
> within the meaning of the Fourteenth Amendment.

Id. at 15-16 (quoting, inter alia, Bell, 441 U.S. at 540).  Turning

then specifically to Howard's medical claims, the Court assessed

them in light of the nature of ailment that Howard alleged, i.e.,

diabetes.  See id. at 16-18 (detailing the Court's observations as

to how Howard's claim that he has diabetes might be read for the

purposes of his Fourteenth Amendment claim).  This Court,

consequently, concluded as follows:

> As drafted, Howard's Amended Complaint fails to state a
> cognizable claim, since nothing in his allegations
> indicates that Defendants sought to inflict unnecessary
> and wanton pain on Howard when Defendants removed all the
> Facility detainees into the Facility recreation yard in

order to conduct a Facility-wide search for controlled
substances.  Moreover, it was wholly reasonable for
Defendants to prevent Howard from consuming his personal
"stash," since Defendants' mandate was to check the
Facility for controlled substances and that, by
definition, implied preclusion on consumption of any
substance storaged within the Facility. Finally, it would
be indeed ludicrous to expect officers searching for
controlled substances to inquire with inmates as to
whether the inmates did eat the breakfast meal served at
the Facility, or had any reason not to miss that meal, or
whether the inmate went back to sleep after consuming the
breakfast meal or their personal "stashed" food in lieu
of breakfast.  Rather, it appears apparent that
Defendants were pursuing a legitimate goal reasonably
related to the Facility's governmental penological
interests.  Paramountly here, nothing in Howard's
allegations indicates that: (1) Howard informed
Defendants (or the Facility officials) of his diabetic
condition (and the fact that his need to consume food
ensued from that health-related reason); and (2)
Defendants (or the Facility officials) ignored the
potential harm to his health by refusing to Howard's
request to provide him with a snack from the Facility's
food stock.  The language used by Howard merely suggests
that Howard himself was aware of the risk to his health.
Since the Amended Complaint does not indicate that
Defendants were notified of that risk while they were
pursuing legitimate penological goals, Defendants could
not have acted with "intent to inflict unnecessary and
wanton pain" and, therefore, Howard's Amended Complaint
fails to state a claim upon which relief may be granted.

Id. at 18-20 (footnote omitted).  Consequently, the Court dismissed

the Amended Complaint.  However, in light of the possibility that

Howard's litigation might have been "hijacked by one of the

original Plaintiffs," this Court dismissed the Amended Complaint

without prejudice and directed Howard to file the Final Complaint.

In no ambiguous terms, the Court explained to Howard that he should

"re-amend" his Amended Complaint by detailing the facts
related to denial of food to Howard either prior to his
removal to the recreation yard, or during the period of

Page -14-

time (equal to three hours and 45 minutes) when Howard
remained in the yard.  Specifically, this Court wishes to
obtain information as to whether Howard (or any other
entity) related the fact of Howard's diabetic condition
(and the ensuing needs for food consumption and avoidance
of bodily overheating) to Defendants at the time when
Howard asked them for permission to consume a snack prior
to being removed to the yard, or if Howard (or any other
entity) made an analogous explanation and requests to
Defendants at any time while Howard remained in the yard.

Id. at 21.  Howard's Final Complaint was filed in response to the
aforesaid directive.

### E.   Allegations Stated in the Final Complaint

The Final Complaint is a nine-page document, largely similar
to its predecessor, the Amended Complaint.  The differences between
the Final and Amended Complaints are limited to three points: (1)
while still naming, as Defendants, John Doe, Regional Commander
("Regional Commander") and Correctional Officers Jack Does, 1-40,
and Joan Doe, 1-40 (jointly "Correctional Officers"), the Final
Complaint also names, an additional Defendant, "Dr. Manar Hanna,
Former Medical Doctor for Correctional Medical Services" at the
Facility ("Dr. Hanna"); (2) Howard's previous request for relief in
the amount of $815 million in damages is increased to $830 million
due to allegations that Dr. Hanna's liability to Howard is $15
million; and (3) entries of the following clarifications:

(a)  The Regional Commander is liable to Howard because,
     "[a]fter many previous occasions of coming to the
     [Facility] to conduct searches, [the Regional Commander]
     knew that there are individuals confined there that have
     physical health problems; [by o]rdering the removal of

all individuals confined into the [r]ec[reation y]ard, .
. . .[h]e . . . recklessly contribut[ed] to putting these
confined individuals into . . . physical harm from the
sudden change in weather conditions, . . . which
recklessly contribut[ed] to the [d]eath of [Howard]";

(b)   The Correctional Officers are liable to Howard because
      they "[f]ollowed the orders of the[] Regional commander
      in removing all confined individuals . . . into the
      [r]ec[reation y]ard [and, hence,] recklessly
      contribut[ing] to put[ting] these confined individuals
      into . . . physical harm from the sudden change in
      weather conditions [and by] refusing to allow [Howard] to
      eat any of his emergency stashed snack for breakfast,
      which recklessly contribute[d] to the [d]eath of
      [Howard]";

(c)   Dr. Hanna is liable to Howard because the Doctor
      "consciously failed to inform [Howard] of [Howard's[
      diagnosis, [_i.e._,] that [Howard] has [d]iabetes, and did
      nothing to correct it in informing [Howard], which
      recklessly contribute[d] to the [d]eath of [Howard.
      Howard] was unaware of his sickness until after he had
      died and was brought back to life, that he had
      [d]iabetes, and had gone into a diabetic shock and died.

(d)   Howard's Final "Complaint is against the listed
      Defendants[' p]erformed [a]cts, [a]ctions,
      [p]erformances, [f]unctions [p]erformed, [f]unctions and
      not against the Defendants themselves."[4]

Docket Entry No. 11, at 1, 4-7, 9.

---

[4]   The nature of the statement (d) is not entirely clear to
this Court, since "[p]erformed [a]cts, [a]ctions, [p]erformances,
[f]unctions [p]erformed and [f]unctions" cannot be "defendants"
in a legal action, only natural and juridical entities can.  This
Court, therefore, presumes that the statement (d) is intended to
convey Howard's desire to assert that Defendants are being sued
in their official rather than personal capacities.

## III. STANDARD OF REVIEW: RULE 8 PLEADING REQUIREMENT

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to puss muster under the Rule 8 standard.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals explained:

> [There are] two new concepts in Twombly.  First, . . . [t]he [Twombly] Court explained that "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 . . . .  The Court explained that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3.  Later, the Court referred to "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to

'sho[w] that the pleader is entitled to relief.'" <u>Id.</u> at 1966.   The Court further explained that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965 & n.3. Second, the Supreme Court disavowed certain language that it had used many times before -- the "no set of facts" language from <u>Conley</u>. <u>See</u> <u>id.</u> at 1968. . . . As the Court instructed, "[t]his phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Twombly</u>, 127 S. Ct. at 1969.

[T]he <u>Twombly</u> decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading. . . . [Thus,] taking <u>Twombly</u> and the Court's contemporaneous opinion in <u>Erickson v. Pardus</u>, 127 S. Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.   <u>See</u> <u>Airborne Beepers & Video, Inc., v. AT&T Mobility L.L.C.</u>, 499 F.3d 663, 667 (7th Cir. 2007).   Put another way, in light of <u>Twombly</u>, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. [Hence,] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. <u>See</u> <u>Twombly</u>, 127 S. Ct. at 1965 n.3.

The second important concept . . . is the rejection of Conley's "no set of facts" language [which became] problematic because, for example, it could be viewed as requiring judges to speculate about undisclosed facts. . . . After <u>Twombly</u>, it is no longer sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct." <u>Id.</u> . . .   The Court [however,] emphasized . . . that it was neither demanding a heightened pleading of specifics nor imposing a probability requirement. <u>See</u> <u>id.</u> at 1964, 1965, 1973 n.14, 1974; [<u>accord</u>] <u>Erickson</u>, 127 S. Ct. at 2200.

The more difficult question raised by <u>Twombly</u> is whether the Supreme Court imposed a new "plausibility" requirement at the pleading stage that materially alters the notice pleading regime.  . . . The Court explained that a plaintiff must "nudge [his or her] claims across

the line from conceivable to plausible" . . . . 127 S. Ct. at 1974. . . . "Plausibility" is related to the requirement of a Rule 8 "showing." [Thus, while the court cannot] dismiss[] . . . a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965. [T]he pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. <u>Id.</u> This "does not impose a probability requirement at the pleading stage[]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. <u>Id.</u>

<u>Phillips</u>, 515 F.3d at 230-34 (original brackets removed).


## IV.   FINAL COMPLAINT MUST BE DISMISSED

### A.   <u>Allegations Against Corrections Officers Fail to State a Claim</u>

At the instant juncture, this Court finds it pointless and a waste of time to recite, one more time, the test applicable to due process civil rights claims of pretrial detainees and civilly confined individuals; this issue was already explained to Howard in detail by Judge Martini, as part of Judge Martini's treatment of the Original Complaint, and re-explained by this Court with respect to Howard's Amended Complaint. Hence, Howard (and any other reader of this Opinion) is referred to Judge Martini and this Court's previous decisions docketed in this matter and detailing the test articulated in <u>Bell</u>, 441 U.S. at 535-40, and <u>Fuentes</u>, 206 F.3d at 341-42; for Howard's (and any other reader's) conveniences, pertinent excerpts of these previous decisions were quoted <u>supra</u>.

Applying the due process test to Howard's allegations against the Regional Commander and Correctional Officers ("jointly, "Officers"), this Court finds the allegations wholly without merit. While noting, in passing, that: (a) contrary to Howard's now entered assertion, no "sudden change in weather conditions" took place on August 30, 2007, in the vicinage of the Facility (since the temperature varied between 72 and 84.5 degrees Fahrenheit, humidity remained at 61 percent, and western wind varied from 3.5 to 6.9 mph, see Docket Entry No. 2, at 26 (establishing this fact via judicial notice)); and (b) it would be wholly unreasonable to obligate the Officers to inquire, prior to any search of the Facility, with each inmate whether the inmate is actually one of the individuals with "physical health problem," and whether his particular "physical health problem" is of such nature that the inmate might be in danger if placed in the recreation yard for a few hours on a summer morning, a dismissal of the Final Complaint would be warranted even if these issues were implicated in the Amended or Final Complaints, this Court dismisses Howard's allegations on other grounds, as detailed below.

In no ambiguous terms, this Court stated to Howard that leave to file the Final Complaint was granted to Howard because

> this Court wishes[d] to obtain information as to whether Howard (or any other entity) related the fact of Howard's diabetic condition (and the ensuing needs for food consumption and avoidance of bodily overheating) to Defendants at the time when Howard asked them for permission to consume a snack prior to being removed to

the yard, or if Howard (or any other entity) made an
analogous explanation and requests to Defendants at any
time while Howard remained in the yard.

Docket Entry No. 9, at 21.

As this Court explained to Howard in its prior opinion, any
plausible inference that the Officers intended to "punish" Howard
in violation of his due process rights (by denying him consumption
of food when he requested to have a snack either prior to his
removal to the recreation yard or during being in the yard) could
be drawn if--and only if--the Officers knew, somehow, about
Howard's diabetic conditions and the potential risk associated with
denial of snack to a diabetic.   Conversely, the Officers were
neither expected to conduct--nor could be liable for lack of--
inquiries with Howard as to whether he overslept his breakfast
meal, or whether he desired to consume his breakfast or a
substitute snack during post-breakfast hours, or whether he would
be willing to wait for a timely lunch service: the Officers
performing a search of the Facility for controlled substances were
not expected to act as Howard's catering service or his private
battlers, or as hotel staff assuring that the clients are satisfied
with the degree of hospitality at the place of their lodging.   In
other words, this Court's decision to grant Howard leave to amend
ensued from the obvious observation to, to a diabetic, the need for
a "snack" is not a request for a hospitality gesture but is,
effectively, a need for medicine.   See Docket Entry No. 9, at 16-18

(detailing the nature of diabetes, as well as the relation between the risks associated with that medical condition and diabetics' need for consumption of snacks).

Howard's Final Complaint unambiguously states that the Officers neither did nor could ignore Howard's diabetic conditions and the risk ensuing from the fact that Howard was not allowed to consume his a snack prior to or during his placement in the recreation yard.  As Howard clarified, neither he nor any other entity who conversed with the Officers knew about Howard's diabetes.  Consequently, the Officers could not have been told--and did not know--about the risk of harm to Howard's health or life.  Stripped of all niceties, the allegations stated against the Officers indicate Howard's opinion that the Officers' inability to clairvoyant the fact of Howard's yet-to-be-discovered diabetes (or to put all inmates at the Facility, Howard included, through a complete physical prior to every search of the Facility to ensure that no inmate had such health problem, which might render a removal to the recreation yard for a few summer-morning hours medically undesirable) qualifies these Officers as liable to Howard for the amount of $815 million.  The Fourteenth Amendment, however, provides for the test couched in terms of the obligation not to punish without due process, rather than in terms of the obligation to have the gift of medical clairvoyance.  See Bell, 441 U.S. at 535-40, and Fuentes, 206 F.3d at 341-42.

Since: (a) Howard cannot "import" his current knowledge as to his diabetic conditions into the Officer's state of mind that existed on August 30, 2007; and (b) it appears apparent from Howard's Original, Amended and Final Complaints that the Officers' actions were reasonably related to a legitimate penological goal of maintaining the Facility free of controlled substances, Howard's allegations against the Officers will be dismissed, with prejudice, for failure to state a claim upon which relief may be granted.[5]

## B.   Allegations Against Dr. Hanna Cannot Be Raised in This Action

As noted _supra_, Howard's newly added allegations against Dr. Hanna read as follows:

---

[5]  Under Rule 15(a), leave to amend a pleading "shall be freely given when justice so requires." See 3 James Wm. Moore, et al., Moore's Federal Practice P 15.14 (3d ed. 2000); Foman v. Davis, 371 U.S. 178, 182 (1962). However, "[a]llowing leave to amend where 'there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced, which would, if true, cure the defects in the pleadings . . . would frustrate Congress's objective . . . to screen out lawsuits that have no factual basis.'" Cal. Pub. Emples'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 146 (3d Cir. 2004). For instance, where the plaintiff had already amended plaintiff's complaint and yet failed to allege sufficient facts, the courts may find that "[t]hree bites at the apple is enough," and conclude that it is proper to deny leave to replead. Salinger v. Projectavision, Inc., 972 F. Supp. 222, 236 (S.D.N.Y. 1997) (citing Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2 (2d Cir. 1996). Here, Howard had his three bites at the apple, and his Final Complaint made it clear that he has no claim against the Officers. Consequently, granting Howard another leave to amend his claims against the Officers would be wholly futile.

> Dr. Hanna is liable to Howard because the Doctor "consciously failed to inform [Howard] of [Howard's[ diagnosis, [i.e.,] that [Howard] has [d]iabetes, and did nothing to correct it in informing [Howard], which recklessly contribute[d] to the [d]eath of [Howard. Howard] was unaware of his sickness until after he had died and was brought back to life, that he had [d]iabetes, and had gone into a diabetic shock and died.

Docket Entry No. 11, at 6.

Howard repeats the same statement on page 8 of his Final Complaint, see id. at 8, adding that Dr. Hanna should have notified Howard of Howard's diabetic conditions "[a]pprox[imately] one year prior" to the search conducted by the Officers on August 30, 2007 (i.e., the action underlying Plaintiffs' Original and Howard's Amended and Final Complaints). Howard's Final Complaint does not clarify the basis for his belief that Dr. Hanna was actually aware of (and, hence, was able but failed to notify Howard or any other entity associated with Howard about) Howard's diabetic conditions until Howard's alleged clinical death. Indeed, the statements made in the Original Complaint indicate that the test for blood sugar was performed (and established Howard's diabetes) after Howard was removed to (and spent a few hours in) the recreation yard, and only after Howard "passed out." Docket Entry No. 2, at 8-9; Docket Entry No. 5, at 4-6. Indeed, the language of the Original, Amended and Final Complaints makes it plausible that Howard is faulting Dr. Hanna for lack of clairvoyant abilities just as he is faulting the Officers for the same. Yet, this Court, finding no reason to rule out, at the instant juncture, the possibility that Howard bases his

conclusions as to Dr. Hanna's liability of certain facts that were, somehow, omitted from the Original, Amended and Final Complaints, construes the language utilized in Howard's three rounds of pleadings as inconclusive with respect to the issue of whether Howard could meet the Rule 8 requirement as to his claim asserting that Dr. Hanna is liable to Howard for failure to disclose Howard's diabetic conditions.

That said, Howard cannot litigate the issue of Dr. Hanna's liability (for failure to provide Howard with medical treatment and enable Howard to protect his health) in the instant action.

Rule 20(a)(2) of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18(a), governs the joinder of claims.  See Fed. R. Civ. P. 18(a), 20(a)(2).  Rule 20(a)(2) provides: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(A) and (B).  Rule 18 (a) provides : "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  Wright & Miller's treatise on federal civil procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes

that under Rule 18:

> Rule 20 deals solely with joinder of parties
> and becomes relevant only when there is more
> than one party on one or both sides of the
> action.  It is not concerned with joinder of
> claims, which is governed by Rule 18.
> Therefore, in actions involving multiple
> defendants Rule 20 operates independently of
> Rule 18 . . .
>
> Despite the broad language of Rule 18(a),
> plaintiff may join multiple defendants in a
> single action only if plaintiff asserts at
> least one claim to relief against each of them
> that arises out of the same transaction or
> occurrence and presents questions of law or
> fact common to all . . .

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, 7 Federal
Practice & Procedure Civil 3d §1655; see also United States v.
Mississippi, 380 U.S. 128, 143 (1965) (where county registrars were
alleged to be carrying on activities which were part of a series of
transactions or occurrences the validity of which depended upon
questions of law or fact common to all of them, joinder of
registrars in one suit as defendants was proper under Rule 20(a));
Ross v. Meagan, 638 F. 2d 646, 650 n.5 (3d Cir. 1981), overruled on
other grounds by, Neitzke v. Williams, 490 U.S. 319, 328 (1989)
(joinder of defendants is not permitted by Rule 20 unless both
commonality and same transaction requirements are satisfied).

Consequently, a civil plaintiff may not name more than one
defendant in his original or amended complaint unless one claim
against each additional defendant is transactionally related to the
claim against the first defendant and involves a common question of

law or fact.  <u>See</u> Fed. R. Civ. P. 20(a)(2).  As the United States Court of Appeals for the Seventh Circuit recently explained, a prisoner may not join in one case all defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28 U.S.C. § 1915(g) . . .
>
> A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.

<u>George v. Smith</u>, 507 F. 3d 605, 607 (7th Cir. 2007).

Here, Howard's attempt to introduce, in his Final Complaint, allegations against Dr. Hanna turns his pleading into a "buckshot complaint" since the allegations against Dr. Hanna lack transactional relation to those made against the Officers.  Indeed, even if this Court were to hypothesize that Dr. Hanna was, somehow, aware of Howard's diabetes one year prior to the Officers' August 30, 2007, the "transaction" of Dr. Hanna's silence is unrelated to the "transaction" in the form of the Officers' search of the Facility for controlled substances and their decisions to remove

the inmates into the recreation yard and to refuse Howard consumption of his "stashed snack." Indeed, no statement made in Howard's pleadings indicates that Dr. Hanna's alleged concealment of Howard's medical information was, somehow, related to the Officers' search of the Facility and denial of snack to Howard one year after Dr. Hanna learned about Howard's diabetes. While Dr. Hanna might be liable to Howard for all *consequences* of Dr. Hanna's concealment of Howard's medical information, including for Howard's alleged clinical death, such potential liability of Dr. Hanna does not tie the Doctor's actions (or inactions) with the Officers' search to create a "single transaction" satisfying the Rule 20 requirement. Consequently, this Court will dismiss Howard's allegations against Dr. Hanna without prejudice to Howard's filing a separate and distinct civil rights action against Dr. Hanna.[6]

---

[6] This Court find such dismissal particularly apropos in light of: (a) Howard having sufficient time (to challenge Dr. Hanna's failure to notify Howard of his medical condition) before Howard's statute of limitation to set forth such a challenge expires; and (b) Howard's ability to file an action in forma pauperis (provided Howard's financial conditions did not change dramatically for the better since his filing of this matter) without even facing the burden of installment deductions or the risk of the "three strikes" rule.
    However, in the event Howard elects to file a civil complaint against Dr. Hanna, this Court strongly urges Howard to include in such complaint the facts upon which Howard bases his belief that Dr. Hanna was, somehow, aware of--but elected to conceal from Howard--Howard's diabetic conditions. (While Howard need not conduct any discovery prior to filing such complaint, nor he is expected to "prove" the facts underlying his beliefs, Howard cannot limit his statements to mere bald conclusions alleging, without any facts, that Dr. Hanna knew or should have known about Howard's diabetes. See Phillips, 515 F.3d at 230-34.

<u>**CONCLUSION**</u>

For the foregoing reasons, Howard's Final Complaint will be dismissed, with prejudice, as to all Defendants other than Dr. Hanna.  Howard's allegations against Dr. Hanna will be dismissed without prejudice to Howard's filing a separate and distinct civil rights action against Dr. Hanna.  The Clerk will be directed to close the instant matter.

An appropriate Order accompanies this Opinion.


<u>S/ Dennis M. Cavanaugh</u>
**Dennis M. Cavanaugh**
**United States District Judge**

Dated: June 2, 2008